

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00025-CV

TEXAS DEPARTMENT OF PUBLIC SAFETY APPELLANT

V.

STEPHANIE WYN RANDOLPH APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

The Texas Department of Public Safety (DPS) filed a motion for rehearing in this case. We deny DPS's motion, but we withdraw our previous opinion and issue this opinion in its place.

DPS determined that because a court had previously ordered mental health services for Stephanie Wyn Randolph, she was therefore not qualified to

---

[1]*See* Tex. R. App. P. 47.4.

purchase a firearm under federal law, and that because she was not qualified under federal law, she was ineligible under Texas law to renew her concealed handgun license. Accordingly, DPS denied her renewal application. The trial court ordered DPS to issue Randolph a license, and DPS now appeals. Because we hold that the evidence was legally sufficient to support the trial court's judgment, we affirm.

**Background**

On July 24, 2008, a county court in Howard County, Texas, found that Randolph was mentally ill and therefore was likely to cause serious harm to herself; was suffering severe and abnormal mental, emotional, or physical distress; was unable to provide for her basic needs; and was unable to make a rational and informed decision as to whether or not to submit to treatment. The court ordered temporary mental health services in a state hospital for a period not to exceed ninety days. Randolph was allowed to leave the hospital before the ninety days had expired. Her doctor later determined that the most likely cause of her symptoms was an autoimmune disorder rather than the bipolar disorder with which she had previously been diagnosed.

When Randolph applied to renew her concealed handgun license, DPS denied her application based on the Howard County court's mental health adjudication. After the justice court upheld DPS's determination,[2] Randolph filed

_____

[2]_See_ Tex. Gov't Code Ann. § 411.180(a) (West 2012) (providing that when DPS denies an application for a concealed handgun license, the applicant may

a petition for review in the county court at law in Parker County.[3] After a trial de novo, the county court at law signed a judgment finding that Randolph was qualified under state and federal law to have a firearm and ordering DPS to "issue or cause to be issued to [Randolph] a concealed handgun license."

**Analysis**

In its sole issue on appeal, DPS argues that that the evidence was legally insufficient to support the trial court's judgment and that the trial court erred by finding that a letter from Randolph's doctor was sufficient to make Randolph qualified under federal and state law for a concealed handgun license following a court-ordered commitment to a mental hospital. In response, Randolph asserts that under federal law, because she was discharged from court-ordered mental health services, her commitment was deemed to have never occurred, and she is therefore not disqualified from purchasing a firearm. In its reply brief, DPS asserts that Randolph's early discharge from the order of commitment did not work to relieve Randolph of federal disqualification, and it merely ended the court's jurisdiction to require a return for commitment without a new order.

Our analysis turns on various federal and state statutes relating to eligibility to purchase a firearm and to obtain a concealed handgun license. We review

_____

request a hearing in the justice court, with the court acting as an administrative hearing officer).

[3]*See id.* § 411.180(e) (providing that an applicant may appeal the justice court's determination by filing a petition in the county court for a trial de novo).

issues of statutory construction under a de novo standard.[4]   Our primary objective in statutory construction is to give effect to the legislature's intent, and to that end, we "construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results."[5]

The Texas statute governing eligibility for a concealed handgun license is government code section 411.172.[6]   The section includes a list of requirements for eligibility, two of which the parties discussed and relied on in the trial court, and which we discuss here:

> (a) A person is eligible for a license to carry a concealed handgun if the person:
>
> . . .
>
> (7) is not incapable of exercising sound judgment with respect to the proper use and storage of a handgun;
>
> . . . [and]
>
> (9) is fully qualified under applicable federal and state law to purchase a handgun.[7]

DPS based its denial of Randolph's application on the ground that Randolph was ineligible for a license under subsection (a)(9) because under

---

[4]*Chesser v. LifeCare Mgmt. Svcs., L.L.C.*, 356 S.W.3d 613, 619–20 (Tex. App.—Fort Worth 2011, pet. denied).

[5]*Id.*

[6]Tex. Gov't Code Ann. § 411.172 (West 2012).

[7]*Id.*

4

federal law, she was not qualified to purchase a handgun. Specifically, DPS decided that Randolph was disqualified by 18 U.S.C. § 922(g)(4), which provides that a person who has been "adjudicated as a mental defective" may not "possess in or affecting commerce, any firearm or ammunition" or "receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."[8]

Federal regulations define "adjudicated as a mental defective" as "[a] determination by a court . . . or other lawful authority that a person, as a result of . . . mental illness, incompetency, condition, or disease: (1) Is a danger to himself or to others; or (2) Lacks the mental capacity to contract or manage his own affairs."[9] Thus, under federal law, Randolph had been adjudicated as a mental defective because a court had determined that, as a result of a mental illness or condition, Randolph was a danger to herself and lacked the mental capacity to manage her own affairs. Because she had been adjudicated as a mental defective, under federal law she could not purchase a firearm. And because she could not purchase a firearm under federal law, she could not meet the government code section 411.172(a)(9) eligibility requirement and therefore was not eligible for a handgun license.

---

[8] 18 U.S.C.A. § 922(g)(4) (West 2000).

[9] *See* 27 C.F.R. § 478.11 (2013).

In the trial court, Randolph countered DPS's reliance on 18 U.S.C. § 922 by pointing out that federal law had been amended so that it now provides that:

> No department or agency of the Federal Government may provide to the Attorney General any record of an adjudication related to the mental health of a person or any commitment of a person to a mental institution if—
>
> (A) the adjudication or commitment, respectively, has been set aside or expunged, or *the person has otherwise been fully released or discharged* from all mandatory treatment, supervision, or monitoring.
>
> . . .
>
> In the case of an adjudication related to the mental health of a person or a commitment of a person to a mental institution, a record of which may not be provided to the Attorney General . . . the adjudication or commitment, respectively, shall be deemed not to have occurred for purposes of [18 U.S.C. § 922(g)(4].[10]

Randolph argued that because she had been discharged from court-ordered supervision, by operation of law the adjudication of her mental health was deemed to have never occurred. The amendment mentions only federal departments and agencies, but by law, the State must inform the Federal Bureau of Investigation of any relevant mental health adjudication, and thus any relevant state mental health adjudication must be reported to the FBI.[11] By presidential directive, a federal agency possessing "relevant records . . . that can be shared with the [national criminal background check system] consistent with applicable

---

[10]NICS Improvement Amendments Act of 2007 (18 U.S.C. § 922 note), Pub. L. No. 110-180, § 101, 122 Stat. 2559 (emphasis added).

[11]*See* Tex. Gov't Code Ann. § 411.052 (West 2012).

6

law" must report those records to the Attorney General.[12]  Accordingly, once the FBI has a record of a relevant mental health adjudication, it must report the record to the Attorney General.  But the FBI may *not* report to the Attorney General a state mental health adjudication submitted to it by a state if the adjudication fits within the amendment.  Accordingly, a relevant state mental health adjudication also falls within application of the amendment.

The trial court admitted into evidence the order of the Howard County court ordering temporary mental health services for Randolph.  With this order, DPS established that Randolph had been adjudicated as a mental defective under federal law, which would serve to disqualify her from buying a firearm.

DPS argued that Randolph could again become eligible for the license by obtaining a certificate of relief of disabilities under Texas Health and Safety Code section 574.088.[13]  That section provides a mechanism for a person who has been discharged from court-ordered mental health services to petition the court that entered the commitment order for an order stating that the person "qualifies for relief from a firearms disability."[14]  At one time, a person disqualified under federal law could apply to the Attorney General for the United States for relief

---

[12]*See* Improving Availability of Relevant Executive Branch Records to the National Instant Criminal Background Check System, 78 Fed. Reg. 4297, 4298, 2013 WL 212902, § 2 (Jan. 16, 2013).

[13]*See* Tex. Health & Safety Code Ann. § 574.088 (West 2010).

[14]*Id.*

from a federal prohibition on purchasing a firearm, but since 1992, the United States Congress has denied funding to the Bureau of Alcohol, Tobacco, Firearms and Explosives to act on applications for relief from firearms disabilities.[15] In 2008, Congress passed an amendment—the same amendment that gives relief for a person who has been discharged from mental health services—that allows states to establish their own program to provide relief from firearms disabilities.[16] Texas has adopted such a program, and it appears in health and safety code section 574.088.

To grant relief under that section, the court that issued the mental health services order must find that "(1) the person is no longer likely to act in a manner dangerous to public safety; and (2) removing the person's disability to purchase a firearm is in the public interest."[17] Thus, Randolph could request the Howard County court that rendered the commitment order to enter an order stating that she qualified for relief under section 574.088. DPS argued that this section provides the only mechanism under the law for Randolph to remove her disability.

---

[15]*See* Treasury, Postal Service, and General Government Appropriations Act of 1993, Pub. L. No. 102–393, 106 Stat. 1729; *Tyler v. Holder*, No. 1:12-CV-523, 2013 WL 356851, at *1 (W.D. Mich. Jan. 29, 2013) (discussing the options for relief from the federal prohibition against purchasing a firearm).

[16]*See* 18 U.S.C. § 922 note § 103(a)(1).

[17]Tex. Health & Safety Code Ann. § 574.088(c).

8

Randolph countered that she was not required to use the procedure in the health and safety code. Instead, she directed the trial court to a different part of government code section 411.172: subsection (f). Subsection (f) allows an applicant to provide a certificate from a doctor to establish that, despite any prior mental health adjudication, the applicant is nevertheless eligible for a concealed handgun license.[18] To that end, Randolph produced a letter from her doctor, which stated that "[t]he most likely cause of her problem is an autoimmune disorder, which led to a seizure disorder" and that "[h]er seizures have been well controlled and with continued treatment her previous behavior is not likely to develop at a future time."

Subsection (f) specifically relates to the eligibility criterion in subsection (a)(7), which requires an applicant to be capable of exercising sound judgment with respect to the proper use and storage of a handgun.[19] Section 411.172(d) states that a person is not capable of exercising such judgment if the person has been declared by a court to be incompetent to manage the person's own affairs.[20] But then subsection (f) provides that notwithstanding subsection (d), a person's psychiatric condition does *not* make the person incapable of exercising sound judgment "if the person provides the department with a certificate from a

---

[18]Tex. Gov't Code Ann. § 411.172(f).

[19]*Id.* § 411.172(d), (f).

[20]*Id.* § 411.172(d).

9

licensed physician whose primary practice is in the field of psychiatry stating that the psychiatric disorder or condition is in remission and is not reasonably likely to develop at a future time."[21] DPS pointed out that the exception in subsection (f) applies only to the eligibility criterion in subsection (a)(7) and does not apply to excuse the eligibility criterion in subsection (a)(9), which requires an applicant to be qualified to purchase a firearm under federal law. Thus, DPS argued, the doctor's letter was insufficient to establish eligibility.

In summary, DPS argued that a mental health adjudication can negate two different license eligibility requirements: the requirement that a person be qualified to purchase a handgun under federal law, and the requirement that a person be capable of exercising the necessary sound judgment. A person who was the subject of a prior mental health adjudication can meet the latter eligibility requirement with a certificate from a doctor and can meet the former by following the procedure in the health and safety code.

Randolph alternatively relied on the amendment to the federal background check law providing that discharge from mental health services causes that mental health adjudication to be deemed to have never happened.[22] The order of Randolph's confinement, entered into evidence in the trial court, was for a period of ninety days. Randolph's husband testified at the hearing that she had

[21] *Id.* § 411.172(f).

[22] *See* 18 U.S.C. § 922 note § 101(c)(1)(A).

been discharged from the hospital prior to the expiration of the ninety days. No evidence showed that she was still under court-ordered treatment, supervision, or monitoring.

At the conclusion of the hearing, the trial court granted Randolph's request for relief. It entered findings of facts and conclusions of law, in which it found and concluded that Randolph was qualified under federal and Texas law to have and carry a firearm and that she should be issued a new concealed handgun license.

This case points out a gap in the overlay of federal and state law in this area. At the time that the mental health services order was entered, Randolph became disqualified under federal law from purchasing a firearm and thus ineligible for a concealed handgun license under Texas law. But upon her discharge, federal law deems Randolph's mental health adjudication to have never occurred, and she is therefore not disqualified from purchasing a handgun under federal law. When Randolph applied for her license renewal, DPS was compelled to deny her application because of the order for mental health services. Unless a discharge is reported to DPS or otherwise made known to it, DPS could have no knowledge that Randolph was no longer under mandatory treatment, supervision, or monitoring. The law provides no mechanism by which relevant government agencies are informed that a person is no longer disqualified.

But unlike DPS when it received Randolph's application, the trial court had evidence before it showing that Randolph had been discharged from mental

11

health services and was no longer under mandatory treatment, supervision, or monitoring. It therefore had evidence by which it could properly conclude that under federal law, the mental health adjudication was deemed to have never occurred and that Randolph was therefore not disqualified under federal law from purchasing a handgun. DPS asserted no other ground for denying Randolph's application. Accordingly, the evidence was sufficient to support the trial court's judgment.

DPS contended in oral argument that Randolph's release from confinement was not sufficient to show her eligibility because a discharge from court-ordered mental health services under Texas law does not qualify as a "discharge" as that term is used in federal law. We are unpersuaded by this argument. We have found no case law interpreting this provision of federal law, but we are compelled by the rules of statutory construction to give the word "discharged" its plain and common meaning.[23] DPS directs us to no federal statute or regulation giving "discharge" any definition other than its plain and common meaning.

Under Texas law, a patient committed for court-ordered mental health services may be discharged at any time before the expiration of the court order if the "facility administrator or person determines that the patient *no longer meets*

---

[23]*See Chesser*, 356 S.W.3d at 619–20.

12

*the criteria for court-ordered mental health services*."[24]   If Randolph was discharged early, it is because an administrator determined that she no longer met the criteria for court-ordered services.  We are unclear how, if Randolph was discharged under this section of the health and safety code, she was not "discharged" within the meaning of the federal statute.

Furthermore the federal statute applies when the applicant has been either "released *or* discharged from all mandatory treatment, supervision, or monitoring."[25]   DPS makes no argument that Randolph was not *released* from treatment, regardless of whether she was *discharged* within the meaning of Texas law.  And the evidence showed that Randolph is not under any mandatory treatment, supervision, or monitoring.  Although she is still under continuing treatment by a doctor, it is for her autoimmune disorder, not a mental health disorder.  The health and safety code provides that with respect to a patient discharged from mental health services, "[t]he physician responsible for the patient's treatment shall prepare a continuing care plan for a patient who is scheduled to be furloughed or discharged unless the patient does not require continuing care."[26]   DPS produced no evidence and elicited no testimony from Randolph or her husband that she was discharged with a continuing care plan.

---

[24]Tex. Health & Safety Code Ann. § 574.086(a), (c) (West 2010) (emphasis added).

[25]*See* 18 U.S.C. § 922 note § 101(c)(1)(A) (emphasis added).

[26]Tex. Health & Safety Code Ann. § 574.081(a) (West 2010).

Instead, all the evidence supported a finding that she was no longer in need of mental health services and that there was no mandatory treatment, supervision, or monitoring of Randolph.

Accordingly, the evidence was sufficient to establish that Randolph was not disqualified under federal law from purchasing a handgun based on a mental health adjudication, and she therefore also established that she met the eligibility requirement in government code section 411.172(a)(9). We overrule DPS's issue.

## Conclusion

Having overruled DPS's sole issue, we affirm the trial court's judgment ordering DPS to issue Randolph a concealed handgun license.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: May 8, 2014